J-A21034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FREEDOM MEDICAL SUPPLY, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE FIRE AND CASUALTY | : | : |
| INSURANCE COMPANY | : | No. 3420 EDA 2015 |

Appeal from the Judgment entered December 11, 2015
in the Court of Common Pleas of Philadelphia County,
Civil Division, No(s): 2268 October Term 2013

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED NOVEMBER 15, 2016**

Freedom Medical Supply, Inc. ("Freedom Medical"), appeals from the

Judgment[1] entered in favor of Allstate Fire and Casualty Insurance Company

("Allstate").  We affirm.

The trial court set forth the relevant underlying facts as follows:

> On June 2, 2011, Pablo Santos [("Santos")] was injured in
> a car accident.  At the time, [] Santos was the named insured on
> an automobile insurance policy issued by [Allstate].  On
> September 21, 2011, [] Santos saw Dr. Maurice Singer ("Dr.
> Singer") for his injuries.  The next day, [Freedom Medical]
> received a prescription from Dr. Singer on Freedom Medical's
> pre-made prescription form dated September 22, 2011.  The

---

[1] Initially, Freedom Medical filed a Notice of Appeal following the denial of its Post-Trial Motions.  On December 7, 2015, this Court entered a *per curiam* Order directing Freedom Medical "to praecipe the trial court Prothonotary to enter judgment on the decision of the trial court."  Order, 12/7/15.  This Court further stated that "[u]pon compliance with Pa.R.A.P. 301, the [N]otice of [A]ppeal previously filed in this case will be treated as filed after the entry of judgment."  ***Id***.  A judgment in favor of Allstate was entered on December 11, 2015, and Freedom Medical's appeal properly lies from that Judgment.

prescription prescribed various durable medical equipment ("DME") for [] Santos[,] including a lumbosacral support, a portable home whirlpool, electric moist heat pad, cervical pillow, and a portable muscle stimulator. On November 2, 2011, Freedom Medical logged a work order, signed by [] Santos, indicating delivery of all the prescribed DME to his address on 12003 Bustleton Avenue in Philadelphia.

On November 12, 2011, Freedom Medical submitted a bill to Allstate for reimbursement for the DME. On November 29, 2011, Allstate sent a letter to Freedom Medical denying its claim for reimbursement and indicat[ing] that the claim was under investigation. [On] April 29, 2013, Allstate sent a letter to Freedom Medical again denying payment[,] explaining that [] Santos was unable to confirm receipt of DME from the prescribing doctor.

April Mathis-Bush ("Mathis-Bush"), a claims service adjustor in the special investigation unit for Allstate, was assigned to investigate Freedom Medical's claim for reimbursement. On April 26, 2012, Mathis-Bush took a statement from an individual who claimed to be [] Santos. The individual presented a driver's license with the name Pablo Santos. The individual stated that he received the DME from Freedom Medical. [] Mathis-Bush did not find the individual to be credible and denied the claim for reimbursement. After suit had been filed, [] Mathis-Bush attended an arbitration hearing where [] Santos was present. [] Mathis-Bush confirmed that the individual who gave the statement in April[] 2012 was not [] Santos. At trial, [] Mathis-Bush also testified that the individual who gave the statement was not the same [] Santos who appeared at trial.

At trial, [] Santos testified that after he went to Dr. Singer[,] he received some medical equipment, but he did not know on what date he received it. [] Santos described the equipment he received as "the thing for the chest, the bracelet that is hot, and something for the feet." About a week after he received the equipment, he gave it to his son because he [did not] need the equipment. [] Santos was subpoenaed to bring the medical equipment he received to trial. Instead of bringing the equipment, [] Santos brought pictures of equipment taken by his son. [] Santos testified that he did not remember ever giving a

statement about the equipment and indicated that the first time he ever met [] Mathis-Bush was at the arbitration hearing.

* * *

[Freedom Medical] brought this action[,] which arose from [Allstate's] denial of reimbursement for certain medical equipment. On May 12, 2014, after an arbitration hearing, there was a finding for [Freedom Medical] against [Allstate] in the amount of $13,309.51. On June 2, 2014, [Allstate] appealed the arbitrators' award. On November 14, 2014, [Freedom Medical] filed three Motions in Limine[,] and on January 9, 2015, [Allstate] filed its responses. The case was tried in front of th[e trial c]ourt[,] sitting without a jury[,] on January 12, 2015[,] and January 13, 2015. On July 14, 2015, th[e trial c]ourt found for [Allstate] and against [Freedom Medical]. On October 22, 2015, after [P]ost-[T]rial [M]otions were denied, [Freedom Medical] filed a Notice of Appeal to the Superior Court of Pennsylvania. On November 6, 2015, [Freedom Medical] filed a timely Statement of Matters Complained of on Appeal pursuant [to] Pa.R.A.P. 1925(b). [Thereafter, following this Court's *per curiam* Order, Judgment was entered in favor of Allstate on December 11, 2015.]

Trial Court Opinion, 12/29/15, at 1-3 (citations omitted).

On appeal, Freedom Medical raises the following questions for our review:

1. Did the [t]rial [c]ourt improperly conclude that [Santos] did not receive [DME] from [Freedom Medical], where Freedom Medical presented "reasonable proof" pursuant to § 1716 of the Pennsylvania Financial Responsibility Motor Vehicle Act ["MVFRL"] of its receipt at trial?

2. Did the [t]rial [c]ourt improperly conclude that Santos was required to bring the DME to trial to demonstrate that it had been delivered to him by Freedom Medical?

3. Did the [t]rial [c]ourt improperly conclude that the refusal of [Allstate] to pay for the DME was not limited to the one reason it asserted prior to the suit for denying Freedom

Medical's claim, namely that the patient could not confirm receipt of the DME?

4. Did the [t]rial [c]ourt improperly conclude that Allstate's refusal to pay Freedom Medical's medical bills was reasonable?

Brief for Appellant at 4.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Stephan v. Waldron Elec. Heating & Cooling LLC**, 100 A.3d 660, 664–65

(Pa. Super. 2014) (citation and brackets omitted).

In its first claim, Freedom Medical contends that the evidence demonstrated that Santos received the DME, and that Allstate's payments were overdue. Brief for Appellant at 18, 19-20, 22-23; **see also id**. at 18 (wherein Freedom Medical cites to section 1716 of the MVFRL to demonstrate that it presented "reasonable proof" of the delivery of the DME). Freedom Medical argues that Allstate had the following information demonstrating that Santos had received the DME: (1) a prescription

- 4 -

received on November 21, 2011, for the DME; (2) Santos's medical records; (3) a Health Care Financing Administration form that detailed Santo's address, phone number, date of birth, date of the accident, the treating doctor, the medical provider, the diagnosis, the DME, and the amount charged for the DME; (4) a recorded statement by Santos confirming receipt of the DME; and (5) a signed work order. *Id*. at 19; *see also id*. at 22-23 (averring that the testimony of Jeffery Bonn, a former collections manager at Freedom Medical, and Santos was sufficient to demonstrate that the DME was delivered). Freedom Medical asserts that, despite Allstate's admission that Santos had receive some of the DME equipment, the trial court erroneously found that Santos had not received the DME. *Id*. at 22. Freedom Medical further asserts that the trial court should not have relied upon Mathis-Bush's speculative testimony that an imposter, not Santos, gave the statements regarding delivery of the DME. *Id*. at 21-23. Freedom Medical also claims that Allstate failed to question the receipt of the DME until a demand for payment had been made, approximately 1½ years following the delivery of the DME. *Id*. at 20. Freedom Medical argues that this delay hampered its ability to provide more testimony regarding the delivery of the DME. *Id*. at 21.

The trial court addressed Freedom Medical's first claim and determined that it is without merit. *See* Trial Court Opinion, 12/29/15, at 16-19. Specifically, the trial court weighed the evidence and made credibility

determinations against Santos regarding the delivery of the DME. *See id*. at 17-19; *see also Stephan*, 100 A.3d at 664. We will not re-weigh the evidence. Accordingly, we adopt the trial court's sound reasoning, and affirm on this basis. *See* Trial Court Opinion, 12/29/15, at 16-19.

In its next claim, Freedom Medical contends that the trial court erred in finding that Santos was required to produce the DME at trial to support the claim that the DME had been delivered. Brief for Appellant at 23. Freedom Medical claims that it served a subpoena on Santos to testify at trial and bring the DME; however, Santos stated that he no longer had the DME and only had photographs of the DME taken by his son. *Id*. at 23-24. Freedom Medical argues that the trial court should not have drawn an inference against Santos for failing to produce the DME, and instead should have relied upon photographs of the DME taken by Santos's son. *Id*. at 23, 24-25. Freedom Medical also asserts that the trial court erred in finding that Freedom Medical waived this issue by failing to object to the absence of the DME because it introduced the testimony. *Id*. at 24.

> The trial court addressed this claim as follows:
>
> Freedom Medical incorrectly asserts that because [] Santos did not comply with the subpoena issued by Freedom Medical, [the trial c]ourt was precluded from considering this fact. Freedom Medical does not contend that the subpoena was not lawfully issued nor that [] Santos was under an obligation to bring the DME to trial. [] Santos testified regarding the subpoena and why he did not bring the DME to court. [The trial c]ourt considered the evidence presented. [The trial c]ourt properly permitted evidence that [] Santos failed to comply with the subpoena and produce the DME at trial.

Trial Court Opinion, 12/29/15, at 11; *see also* N.T., 1/13/15, at 20-22 (wherein Santos testified that he did not comply with the subpoena requiring him to bring the DME to trial).

Upon our review, we conclude that the trial court was free to consider the fact that Santos failed to produce the DME, in contravention of the subpoena, because the trial court was required to determine whether the DME was delivered to Santos, and whether Freedom Medical properly billed Allstate. *See* Pa.R.C.P. 234.1(a) (noting that "[a] subpoena is an order of the court commanding a person to attend and testify at a particular time and place. It may also require the person to produce documents or things which are under the possession, custody or control of that person."). Thus, we agree with the trial court's sound reasoning, and conclude that the trial court was free to consider the fact that Santos failed to produce the DME. *See* Trial Court Opinion, 12/29/15, at 11.

In its third claim, Freedom Medical contends that the trial court erred in failing to acknowledge that this case involved an insurance policy, "which required consideration of a higher standard of care by an insurer towards its insured or medical provider than in other situations." Brief for Appellant at 25. Freedom Medical argues that Allstate violated the MVFRL by failing to pay the first party medical benefits on behalf of Santos within 30 days of the receipt of reasonable proof of the benefits. *Id*. at 25, 28.

The trial court addressed Freedom Medical's claim and determined that it is without merit. **See** Trial Court Opinion, 12/29/15, at 19. We affirm on the sound reasoning of the trial court for the purposes of this appeal. **See id**.

Freedom Medical also argues that even if it had failed to provide reasonable proof under the MVFRL, Allstate violated the Unfair Claims Settlement Practices Regulations ("UCSPR") and the Unfair Insurance Practices Act ("UIPA"). Brief for Appellant at 25-26, 28. Freedom Medical specifically asserts that Allstate failed to complete the investigation within a reasonable amount of time; failed to advise Freedom Medical when the investigation would be completed; failed to acknowledge the work order sent by Freedom Medical; failed to notify Freedom Medical of the results of the investigation; and misrepresented the reasons for denying the claim. **Id**. at 25-27. Freedom Medical claims that the trial court does not dispute that Allstate violated the USCPR and UIPA. **Id**. at 27-28.[2]

Initially, the regulations cited by Freedom Medical that were purportedly violated only apply to claimants. **See, e.g.,** 31 Pa. Code

---

[2] Freedom Medical acknowledges that the UIPA and UCSPR do not create private causes of action. **See** Reply Brief for Appellant at 6; **see also Smith v. Nationwide Mut. Fire Ins. Co.**, 935 F. Supp. 616, 620 (W.D. Pa. 1996) (applying Pennsylvania law and concluding that "there is no private cause of action under the UIPA or the [UCSPR]."); **Albert v. Erie Ins. Exch.**, 65 A.3d 923, 931 (Pa. Super. 2013) (stating that "[t]he authority to enforce the [UIPA] is vested in the Pennsylvania Department of Insurance. In light of the fact that the Act does not create a private cause of action, the regulations promulgated thereunder do not create a private cause of action.") (citation omitted).

§ 146.7(a)(1) (stating that "[w]ithin 15 working days after receipt by the insurer of properly executed proofs of loss, the *first-party claimant* shall be advised of the acceptance or denial of the claim by the insurer. … The denial shall be given to the *claimant* in writing and the claim file of the insurer shall contain a copy of the denial.") (emphasis added); 31 Pa. Code § 146.7(c)(1) (stating that "[i]f the insurer needs more time to determine whether a first-party claim should be accepted or denied, it shall so notify the *first-party claimant* within 15 working days after receipt of the proofs of loss giving the reasons more time is needed. …") (emphasis added); 31 Pa. Code § 146.6 (stating that "[e]very insurer shall complete investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed within the time. … [T]he insurer shall provide the *claimant* with a reasonable written explanation for the delay and state when a decision on the claim may be expected.") (emphasis added). Santos, the purchaser of the insurance policy with Allstate, not Freedom Medical, is the claimant. **See** 31 Pa. Code § 146.2 (defining claimant as "either a first-party claimant, a third-party claimant, or both, and including the claimant's attorney and a member of the claimant's immediate family designated by the claimant."); **id**. (defining first-party claimant as "[a]n individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract.");

see also 31 Pa. Code § 69.3 (defining "provider" as "[a] person or institution which provides treatment, accommodations, products or services."). Further, Allstate regularly communicated with the claimant, Santos, and his attorney during the investigation. **See** Trial Court Opinion, 12/29/15, at 21. Based upon the foregoing, Freedom Medical is not entitled to relief on their UIPA and UCSPR claims.

Finally, Freedom Medical contends that Allstate could not assert new reasons for the denial at trial, *i.e.*, that the person who gave the recorded statement in 2012 was not the same person (Santos) who testified at arbitration in 2014 and trial in 2015. Brief for Appellant at 28-29.

Here, Allstate initially denied payment to Freedom Medical because Santos was unable to confirm the receipt of the DME. **See** Trial Court Opinion, 12/29/15, at 2, 19. Following the filing of Freedom Medical's action, Allstate learned that Santos had not provided the statement to Mathis-Bush in April 2012. **See** N.T., 1/13/15, 42-43; **see also** Trial Court Opinion, 12/29/15, at 3. The fact that Allstate learned new information following the institution of the action does not preclude it from raising the new information as a defense. **See** Trial Court Opinion, 12/29/15, at 12 (stating that "[a]lthough Allstate only provided a single reason for denial of the claim in 2013[,] that does not mean that it is precluded from raising additional reasons at trial); 16 (stating that "[a]lthough Allstate denied the claim for a specific reason, this does not preclude Allstate from defending

itself in court and challenging the reliability of the evidence presented by Freedom Medical."). We conclude that Freedom Medical's claim in this regard is without merit.

In its fourth claim, Freedom Medical contends that Allstate's conduct in denying the claim was unreasonable. Brief for Appellant at 29-30. Freedom Medical argues that Allstate's failure to respond to evidence of the delivery of the DME forced Freedom Medical to file the instant action. *Id*. at 29. Freedom Medical asserts that under section 1716 of the MVFRL, Allstate should have paid Freedom Medical the amount of its unpaid bills plus 12% interest, and counsel fees and costs. *Id*. Freedom Medical claims that Allstate purposefully makes it difficult for medical providers, such as Freedom Medical, to pursue meritorious claims by "making misleading statements, filing repeated appeals, and presenting frivolous defenses that were never communicated to Freedom Medical prior to suit." *Id*. at 30; *see also id*. at 29-30.

Here, Freedom Medical again attacks the trial court's credibility findings and denial of the claim. As noted above, the trial court was free to make credibility determinations against Freedom Medical regarding the delivery of the DME. *See* Trial Court Opinion, 12/29/15, at 17-19; *see also Stephan*, 100 A.3d at 664. We will not re-weigh the trial court's credibility determinations, and conclude that Allstate did not act unreasonably in denying the claim. *See* Trial Court Opinion, 12/29/15, at 17-19.

Furthermore, we adopt the trial court's sound reasoning and determination that Freedom Medical's counsel fees and costs claims are without merit. *See id*. at 23-24.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

FREEDOM MEDICAL SUPPLY, INC.  : OCTOBER TERM 2013
            : NO. 02268
            :
    PLAINTIFF     : 3420 EDA 2015
            :
    v.        :
            :
ALLSTATE FIRE AND CASUALTY  :
INSURANCE COMPANY    :
            :
    DEFENDANT    :

Powell, J.             **December 29, 2015**

**OPINION**

## I. PROCEDURAL HISTORY

Plaintiff brought this action which arose from Defendant's denial of reimbursement for certain medical equipment. On May 12, 2014, after an arbitration hearing, there was a finding for Plaintiff against the Defendant in the amount of $13,309.51. On June 2, 2014, Defendant appealed the arbitrators' award. On November 14, 2014, Plaintiff filed three Motions in Limine and on January 9, 2015, the Defendant filed its responses. The case was tried in front of this Court sitting without a jury on January 12, 2015 and January 13, 2015. On July 14, 2015, this Court found for the Defendant and against the Plaintiff. On October 22, 2015, after post-trial motions were denied, the Plaintiff filed a Notice of Appeal to the Superior Court of Pennsylvania. On November 6, 2015, the Plaintiff filed a timely Statement of Matters Complained of on Appeal pursuant Pa.R.A.P. 1925(b).

## II. FACTUAL BACKGROUND

On June 2, 2011, Pablo Santos ("Mr. Santos") was injured in a car accident. At the time, Pablo Santos was the named insured on an automobile insurance policy issued by Allstate

Insurance Company ("Allstate"). On September 21, 2011, Mr. Santos saw Dr. Maurice Singer ("Dr. Singer") for his injuries. The next day, Freedom Medical Supply ("Freedom Medical") received a prescription from Dr. Singer on Freedom Medical's pre-made prescription form dated September 22, 2011. The prescription prescribed various durable medical equipment ("DME") for Mr. Santos including a lumbosacral support, a portable home whirlpool, electric moist heat pad, cervical pillow, and a portable muscle stimulator. On November 2, 2011, Freedom Medical logged a work order, signed by Mr. Santos, indicating delivery of all the prescribed DME to his address on 12003 Bustleton Avenue in Philadelphia. N.T. 1/12/2015 at 14, 16, 20, 23, 92; N.T. 1/13/2015 at 87.

On November 12, 2011, Freedom Medical submitted a bill to Allstate for reimbursement for the DME. On November 29, 2011, Allstate sent a letter to Freedom Medical denying its claim for reimbursement and indicated that the claim was under investigation. April 29, 2013, Allstate sent a letter to Freedom Medical again denying payment explaining that Mr. Santos was unable to confirm receipt of DME from the prescribing doctor. N.T. 1/12/2015 at 24, 36-37, 43.

April Mathis-Bush ("Mathis-Bush"), a claims service adjustor in the special investigation unit for Allstate, was assigned to investigate Freedom Medical's claim for reimbursement. On April 26, 2012, Mathis-Bush took a statement from an individual who claimed to be Mr. Santos. The individual presented a driver's license with the name Pablo Santos. The individual stated that he received the DME from Freedom Medical. Ms. Mathis-Bush did not find the individual to be credible and denied the claim for reimbursement. After suit had been filed, Ms. Mathis-Bush attended an arbitration hearing where Mr. Santos was present. Ms. Mathis-Bush confirmed that the individual who gave the statement in April, 2012 was not Mr. Santos. At trial, Ms. Mathis-

2

Bush also testified that the individual who gave the statement was not the same Mr. Santos who appeared at trial. N.T. 1/12/2015 at 107, 113-114, 120-121, 124; N.T. 1/13/2015 at 42-43, 57.

At trial, Mr. Santos testified that after he went to Dr. Singer he received some medical equipment, but he did not know on what date he received it. Mr. Santos described the equipment he received as "the thing for the chest, the bracelet that is hot, and something for the feet." About a week after he received the equipment, he gave it to his son because he didn't need the equipment. Mr. Santos was subpoenaed to bring the medical equipment he received to trial. Instead of bringing the equipment, Mr. Santos brought pictures of equipment taken by his son. Mr. Santos testified that he did not remember ever giving a statement about the equipment and indicated that the first time he ever met Ms. Mathis-Bush was at the arbitration hearing. N.T. 1/13/2015 at 11, 13, 15-23, 27, 29-30.

## III. DISCUSSION

Appellant raises the following issues:

1. The Trial Court erred in denying Freedom Medical's Motion in Limine to preclude any challenge to the amount of Freedom Medical's Charges for electrical muscle stimulator ("EMS") and whirlpool (EMS and whirlpool are hereinafter referred to collectively as "DME") and any evidence relating to the cost of Freedom Medical from DME.
2. The Trial Court erred in denying Freedom Medical's Motion in Limine to preclude any evidence or testimony relating to reasonableness and necessity of the DME provided by Freedom Medical to Pablo Santos ("Santos").
3. Allstate's responses to both [M]otions in [L]imine were untimely by over a month and should not have been considered by the Trial Court.
4. The Trial Court erred in allowing evidence relating to the cost of the DME to Freedom Medical, as well as permitting any challenge for the reasonableness and necessity of the DME since no peer review was performed by Allstate. See January 12, 2015 N.T. pp. 56-57.
5. The Trial Court erred in not permitting discovery of redacted claims notes prepared by Allstate, where no privilege log was

3

produced by Allstate, and the claims of Freedom Medical involved allegations of wanton conduct on the part of Allstate.

6. The Trial Court erred by not finding that the man who testified at the trial in January, 2015, who identified himself as Santos, was the same man who gave a recorded statement to April Mathis[-]Bush ("Bush") of Allstate on April 26, 2012. Specifically, the photograph on the driver's license presented to Bush on April 26, 2012 depicts the same person who testified at the time of arbitration and trial. This driver's license expired on March 22, 2013. This driver's license presented by Santos at trial marked at P-23 has the same address that he had been using (12003 Bustleton Avenue, Philadelphia, PA, where the DME was delivered). The photograph on the more recent license depicts the same person as the man who testified at trial, i.e. Santos.

7. Based upon a review of the evidentiary record as a whole. The Trial Court erred by failing to find that Jeffrey Bonn of Freedom Medical was a credible witness, that Bush was not a credible witness, and that Santos was credible insofar that DME was delivered to his house in November, 2011.

8. The Trial Court erred by not rejecting Allstate's stated position that Santos could not verify receipt of the DME was unreasonable and completely unsupported by any evidence as Santos testified at his April 26, 2012 recorded statement that he received the DME. Other than Bush's mere hunch that Santos did not receive the DME, there was overwhelming credible evidence presented at trial that the DME was delivered to Santos. Santos also signed a work order confirming receipt which was provided to Allstate prior to suit. Photographs of the DME were sent to Allstate. No additional investigation was performed by Allstate. Finally, Santos testified at the arbitration and at trial that he received the DME and later gave it to his son, Paul Santos.

9. The Trial Court erred in concluding that Santos was required to bring the DME to trial to demonstrate it had been delivered to him by Freedom Medical. Although the trial subpoena issued to Santos by counsel for Freedom Medical asked him to bring the DME, Santos no longer had the DME in his possession and was not required to retrieve it from his son to bring it to trial. See January 13, 2015 N.T. p. 82-83. No inference should have been drawn from Santos' not bringing the DME, especially when photographs of the DME taken by Santos' son where introduced into evidence.

10. The Trial Court erred in allowing Bush to testify regarding office notes from Maurice Singer, D.O. as it was beyond the scope of Bush's direct and cross examination. See January 13, 2015 N.T., pp. 88-97.

11. The Trial Court erred in failing to find that Allstate's failure to pay for the DME is limited to the one reason it asserted prior to suit for

4

denying Freedom Medical's claim, namely that the patient could not confirm receipt of the DME. See, Lyman v. State Farm Mut. Auto. Ins. Co., 2014 U.S. Dist. LEXIS 173345 (E.D. Pa. 2014) (Stengel, J.). (Shift in insurer's reasons for denying claim can constitute bad faith).

12. The Trial Court erred in failing to find that Allstate's failure to pay Freedom Medical's medical bills was unreasonable. The Trial Court should have found that Allstate was liable for damages under §1716 and 1798 of the Pennsylvania Financial Responsibility Motor Vehicle Act, including interest at 12% of the bills of $373.56 from December 15, 2011 to the present. This amount is $3.73 per month, for a total of $138.21 in interest as of the end of trial.

13. The Trial Court erred by failing to find that Allstate violated the Unfair Insurance Practices Act ("UIPA"), 40 Pa. C.S.A. §1171.1 and Unfair Claims Settlement Practices Regulations ("UCSPA"), 31 Pa. C. §146-6, 146.7 by not completing its investigation within a reasonable time and by not properly advising Freedom Medical of the results of the investigation.

14. The peer review process is the exclusive system for an insurer to challenge the reasonableness and necessity of medical treatment provided to an insured. Danton v. State Farm and Mut. Auto Insurance Company, 769 F. Supp. 174, 177 (E.D. Pa. 1991); Neun v. State Farm Insurance Company, 1996 U.S. Dist. LEXIS 5738 (E.D. Pa. 1996); (peer review is the exclusive system for an insurer to challenge the reasonableness and necessity of medical treatment to an insured. Williams v. State Farm Mut. Auto. Ins. Co., 763 F. Supp. 121, 124 (E.D. Pa. 1991).

15. Products, which are determined to be necessary by a licensed health care provider, are necessary medical treatment and rehabilitative services unless they shall have been found or determined to be unnecessary by a state-approved peer review organization. 75 Pa. C.S.A. §1702. Thus, duly presented medical care is presumptively reasonable and necessary unless peer review results is a contrary determination. Levine v. Travelers Property Cas. Ins. Co., 69 A.3d 671, 677 (Pa. Super. 2013).

16. The Trial Court erred in finding that the DME was not reasonable and necessary because Allstate failed to have a peer review performed.

17. Pursuant to the Unfair Claims Settlement Practices Regulations ("UCSPR"), "[e]very insurer shall complete investigation of the claim within 30 days after notification of the claim, unless the investigation cannot reasonably be completed within the time. If the investigation cannot be completed within 30 days, and every 45 days thereafter, the insurer shall provide the claimant with a

reasonable written explanation for the delay and state when a decision on the claim may be expected[."] 31 Pa. C. § 146.6.

18. Pursuant to the UCSPR, "[w]ithin 15 working days after receipt by the insurer of the properly executed proofs of loss, the first party claimant shall be advised of the acceptance of denial of the claim by the insurer. An insurer may not deny a claim on the grounds of a specific policy provision, condition or exclusion unless reference to the provision, condition or exclusion is included in the denial. The denial shall be given to the claimant in writing and the claim file of the insurer shall contain a copy of the denial". 31 Pa. C. § 146.7(a)(1).

19. "If the insurer needs more time to determine whether a first-party claim should be accepted or denied, it shall so notify the first party claimant within 15 working days after receipt of the proof of loss giving the reason why more time is needed. If the investigation remains incomplete, the insurer shall, within 30 days of the initial notification, and every 45 days thereafter, send to the claimant a letter setting forth the reasons why additional time is needed for investigation and state when a decision on the claim may be expected[."] UCSPR, 31 Pa. C. §164.7.

20. The Unfair Insurance Practices Act ("UIPA"), 40 Pa. C.S.A. §1171.1, specifically prohibits:

(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverage at issue;

(ii) Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies, ...

(iii) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

[(iv)] Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonable clear;

[(v)] Compelling persons to institute litigation to recover amounts due under an insurance policy...;

[(vi)] Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts of applicable law for denial of a claim...".

40 P.S. §1171.5(a)(10) (cited by Grigos v. Certain Underwriters at Lloyds, London, 2010 Phila. Ct. Com. Pl. LEXIS 383 (Phila. CCP 2010) (Bernstein, J.).

21. The Trial Court erred in failing to find that the conduct of Allstate was wanton because its statement to Freedom Medical on April 29, 2013 that Santos had not received the DME was misleading and an outright falsehood. Further, Allstate refused to respond to Freedom Medical's request for a copy of the statement of Santos. Allstate's goal has been to make it as costly as possible for medical providers

6

such as Freedom Medical to pursue meritorious claims by making misleading statements, filing repeated appeals, and presenting frivolous defenses that were never communicated to Freedom Medical prior to suit.

22. The Trial Court erred in failing to find that the failure of Allstate to pay Freedom Medical's invoice is conduct which is wanton, subjecting Allstate to treble damages pursuant 75 Pa. S.C.A. Section 1797(b)(4), as Allstate had no basis not to pay for the DME, conducted an incomplete investigation, failed to apprise Freedom Medical and Santos of the status of its investigation as required by the UIPA, and made false and misleading statements that the DME had not been received by Santos. Olsofsky, v. Progressive Ins. Co., 52 Pa. D&C 4th 449, 480 fn. 3 (Lack. Cty., 2001), 2001 Pa. Dist. & Cnty Dec. LEXIS 418. *See also*, 75 Pa. C.S. §1797(b)(1), for the purpose of PRO.

23. The Trial Court erred in failing to award reasonable counsel fees to Freedom Medical pursuant to 75 Pa. C.S.A. §1716, 1797 and 1798. Courts have made significant awards for legal fees on similar cases. Herd Chiropractic Clinic, P.C. v. State Farm Mutual Auto. Ins. Co., 29 A.3d 19 (Pa. Super. 2011) rev'd on other grounds 64 A.3d 1058 (Pa. 2013) (allowing legal fees of $27,047.50), Levine, supra (awarding $27,930.00 in legal fees).

24. The Trial Court erred in failing to find that the hourly rate of Dean E. Weisgold, Esquire, in the amount of $350.00 per hour is consistent with other practitioners with his level of experience (26 years) in this jurisdiction.

25. The Trial Court erred in failing to find that the legal fees and costs submitted by Freedom Medical ($27,079.10), were fair and reasonable and necessarily incurred in connection with this litigation, which began at the Philadelphia Municipal Court level in 2013, continued through arbitration and then concluded at a two day trial in 2015. See Exhibit P-9, and updated invoice.

Pre-Trial Matters

Freedom Medical's first three assignments of error challenge this Court's rulings on Motions in Limine. A trial court's decision to grant or deny a Motion in Limine is subject to an evidentiary abuse of discretion standard of review. *Catlin v. Hamburg*, 56 A.3d 914, 922 (Pa. Super. 2012) (*quoting Commonwealth v. Reese*, 31 A.3d 708, 715–716 (Pa. Super. 2011)). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or

ill-will, or such lack of support so as to be clearly erroneous." *Parr v. Ford Motor Co.*, 109 A.3d 682, 690-91 (Pa. Super. 2014) (*quoting Grady v. Frito–Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003); *Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, 11 (Pa. Super. 2013). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Parr*, 109 A.3d at 690-91 (citation omitted).

First, Freedom Medical claims that "[t]he Trial Court erred in denying Freedom Medical's Motion in Limine to preclude any challenge to the amount of Freedom Medical's charges for electrical muscle stimulator ("EMS") and whirlpool (EMS and whirlpool are hereinafter referred to collectively as "DME") and any evidence relating to the cost of Freedom Medical from DME." In its Motion, Freedom Medical argued that Allstate should be precluded from challenging the amount Freedom Medical charged for DMEs at trial because Allstate had not previously challenged the amount of the charges and that the amount Freedom Medical charges for DMEs are set statutorily.

Under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), automobile insurance companies must provide insurance coverage "for reasonable and necessary medical treatment and rehabilitative services." 75 Pa. Stat. and Cons. Stat. Ann. § 1712(1). To be able to be reimbursed under the MVFRL, Freedom Medical is required to demonstrate the reasonableness of its services. *See Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 2014 WL 626430, at *7 (E.D. Pa. 2014) (*citing Allied Medical Assocs. v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 1578603, at *5 (E.D. Pa. 2009) (finding an insurer only needs to pay providers for medical devices that are "reasonable and necessary").

Under the MVFRL, "[i]f a prevailing charge, fee schedule, recommended fee, inflation index charge or DRG payment has not been calculated under the Medicare program for a

8

particular treatment, accommodation, product or service, the amount of the payment may not exceed 80% of the provider's usual and customary charge. 75 Pa.C.S. § 1797(a). Neither the EMS nor the Whirlpool are included in the Medicare Fee Schedule and therefore are unlisted products subject to the 80% limit.

Contrary to Freedom Medical's assertion, the MVFRL does not proscribe a single way for providers to calculate their usual and customary charge. Usual and customary charge is defined as "[t]he charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 31 Pa. Code § 69.3. "In calculating the usual and customary charge, an insurer *may* utilize the requested payment amount on the provider's bill for services or the data collected by the carrier or intermediaries to the extent that the data is made available. 31 Pa. Code § 69.43(c) (emphasis added). Here, the statute uses the permissive term "may" which indicates that it not only contemplates, but allows, other manners of calculating charges. *Commonwealth v. Baraniak*, 504 A.2d 931 (Pa. Super. 1986) ("While the word 'shall' might, in a proper setting, be interpreted as permissive, the word "may" can never be given the imperative meaning.") (citation omitted). Accordingly, the requested payment amount on the provider's bill is not the exclusive means of calculating the usual and customary charge, but merely an example of one way to calculate the usual and customary charge. Freedom Medical, to be able to recover, needed to present evidence of its usual and customary charge. This Court did not err in permitting the parties to present evidence of the usual and customary charges for DMEs, including the amount of Freedom Medical's bill and the cost of equipment to Freedom Medical.

Second, Freedom Medical claims "[t]he Trial Court erred in denying Freedom Medical's Motion in Limine to preclude any evidence or testimony relating to reasonableness and necessity of the DME provided by Freedom Medical to Pablo Santos ("Santos")." In its Motion, Freedom Medical argued that no evidence should be permitted regarding the reasonableness and necessity of the DME because there was no peer review. The MVFRL provides a mechanism by which an insurer may challenge the reasonableness and necessity of an insured's medical treatment. An insurer may submit an insured's medical bill to a peer review organization ("PRO") to confirm that such treatment is medically necessary. 75 Pa.C.S. § 1797(b)(1). However, an insurer is not required to engage in the PRO process, which is anticipated by the statute. If an insurer does not utilize the PRO process, an insured or a provider "may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise." *Perkins v. State Farm Ins. Co.*, 589 F. Supp. 2d 559, 562-63 (M.D. Pa. 2008) (*quoting* 75 Pa.C.S. § 1797(b)(4)). There is no requirement that an insurer use the PRO process or challenge whether products are reasonable and necessary. It is the Plaintiff's burden to prove that medical supplies and charges are recoverable. This Court properly denied Freedom Medical's Motion in Limine.

Third, Freedom Medical asserts that "Allstate's responses to both Motions in Limine were untimely by over a month and should not have been considered by the Trial Court." Relative to a Motion's timeliness, we recognize that a trial court has the discretion to control its calendar, and this Court may interfere only when justice demands it. *Cheng v. Se. Pennsylvania Transp. Auth.*, 981 A.2d 371 (Pa. Cmwlth. 2009). On June 5, 2014, it was ordered that "all pre-trial and dispositive motions must be filed no later than October 6, 2014." Without requesting a continuance, Freedom Medical filed both of his Motions in Limine on November 14, 2014. Allstate responded on January 9, 2015. Freedom Medical's Motion in Limine were untimely and

10

in violation of the June 5, 2015 Order. This Court finds that Freedom Medical has waived any challenge to the timeliness of Allstate's response. In addition, Freedom Medical was not prejudiced by the timing of Allstate's response. This claim is meritless.

Next, Freedom Medical alleges that "the Trial Court erred in concluding that Santos was required to bring the DME to trial to demonstrate it had been delivered to him by Freedom Medical. Although the trial subpoena issued to Santos by counsel for Freedom Medical asked him to bring the DME, Santos no longer had the DME in his possession and was not required to retrieve it from his son to bring it to trial. See January 13, 2015 N.T. p. 82-83. No inference should have been drawn from Santos' not bringing the DME, especially when photographs of the DME taken by Santos' son where introduced into evidence."
Initially, this Court notes that this claim is waived as counsel failed to object to this evidence at trial. N.T. 1/13/2015 at 21. Issues not raised by timely objection at trial are waived for purposes of appeal. *See* Pa.R.A.P. 302; *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 29 A.3d 19, 22 (Pa. Super. 2011) rev'd, 64 A.3d 1058 (Pa. 2013) (*citing Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116–17 (Pa. 1974).

In the event that this issue is not waived, it is meritless. Freedom Medical incorrectly asserts that because Mr. Santos did not comply with the subpoena issued by Freedom Medical, this Court was precluded from considering this fact. Freedom Medical does not contend that the subpoena was not lawfully issued nor that Mr. Santos was under an obligation to bring the DME to trial. Mr. Santos testified regarding the subpoena and why he did not bring the DME to court. This Court considered the evidence presented. This Court properly permitted evidence that Mr. Santos failed to comply with the subpoena and produce the DME at trial.

Next, Freedom Medical claims "[t]he Trial Court erred in failing to find that Allstate's failure to pay for the DME is limited to the one reason it asserted prior to suit for denying Freedom Medical's claim, namely that the patient could not confirm receipt of the DME. See, Lyman v. State Farm Mut. Auto. Ins. Co., 2014 U.S. Dist. LEXIS 173345 (E.D. Pa. 2014) (Stengel, J.). (Shift in insurer's reasons for denying claim can constitute bad faith)."

Preliminary objections shall state specifically the grounds relied upon. All preliminary objections shall be raised at one time. They may be inconsistent. 231 Pa. Code § 3142(b). Causes of action and defenses may be pleaded in the alternative. Pa.R.C.P. No. 1020 (b). "A party pleading in the alternative cannot be required to elect *upon which theory or which claim or defense* he rests his case. To require him to make an election would defeat the purpose of permitting him to plead in the alternative." *Laughlin v. McConnel*, 191 A.2d 921, 924 (Pa. Super. 1963) (citation omitted).

Here, Allstate indicated the in its Explanation of Benefits that it denied Freedom Medical's claim because Mr. Santos could not confirm receipt of the DME. After Freedom Medical filed suit, Allstate raised the reasonableness and necessity of the DME as a New Matter. Defendants are permitted to present inconsistent defenses. Although Allstate only provided a single reason for denial of the claim in 2013 that does not mean that it is precluded from raising additional reasons at trial. This claim is meritless.

Trial Matters

Freedom Medical next argues that "[t]he Trial Court erred in not permitting discovery of redacted claims notes prepared by Allstate, where no privilege log was produced by Allstate, and the claims of Freedom Medical involved allegations of wanton conduct on the part of Allstate."

A party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. 231 Pa. Code § 4003.1. Pennsylvania has historically held that the burden of proof is upon the party asserting that disclosure of the information would not violate the attorney-client privilege. *Commonwealth v. Maguigan*, 511 A.2d 1327, 1334 (Pa. 1986). "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5928. The attorney-client privilege exists to "foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Gocial v. Indep. Blue Cross*, 827 A.2d 1216, 1222 (Pa. Super. 2003) (citation omitted). The attorney-client privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services. *Id.*

At trial, after a request by the parties, this Court examined the redacted portions of Ms. Mathis-Bush's log *in camera*. This Court determined that the redactions were covered by attorney-client privilege and were not discoverable by Freedom Medical. N.T. 1/12/2015 at 126-132. Freedom Medical has not provided this Court with any information that would establish that the redacted portions of the log were not privileged.

Freedom Medical makes multiple assignments of error challenging evidentiary rulings by this Court. Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." *Commonwealth v. Selenski*, 18 A.3d 1229, 1232 (Pa. Super. 2011). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or

13

partiality, as shown by the evidence of record." *Commonwealth v. Thompson*, 106 A.3d 742, 754

(Pa. Super. 2014) (*quoting Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005)

*appeal denied*, 928 A.2d 1289 (Pa. 2007)).

Freedom Medical claims "[t]he Trial Court erred in allowing Bush to testify regarding

office notes from Maurice Singer, D.O. as it was beyond the scope of Bush's direct and cross

examination. See January 13, 2015 N.T., pp. 88-97."

Freedom Medical challenges the following testimony:

> MR. McNULTY: And during those -- those office notes, was Mr.
> Santos purportedly receiving electrical stimulation as a part of the
> treatment?
> MS. MATHIS-BUSH: Yes.
> MR. WEISGOLD: Objection. Beyond the scope of cross.
> THE COURT: No, I will allow it.
>
> ...
>
> MR. McNULTY: Before yesterday, had this document ever been
> submitted to Allstate?
> MS. MATHIS-BUSH: No.
> MR. WEISGOLD: Objection, Your Honor. It's beyond the scope
> of cross.
> THE COURT: No, I allow it.
> MS. MATHIS-BUSH: No.
> MR. McNULTY: Now after yesterday, or -- yeah, after yesterday's
> court session, did you look into whether a claim had ever been
> made for a May 15, 2011, accident?
> MR. WEISGOLD: Objection. Beyond the scope of cross. Way
> beyond.
> MR. McNULTY: I agree, but I would just ask for a little bit of
> leeway.
> THE COURT: I will allow it.
> MR. McNULTY: I forgot to ask it on direct.

N.T. 1/13/2015 at 89-90.

The scope of redirect examination is largely within the discretion of the trial court.

*Commonwealth v. Dreibelbis*, 426 A.2d 1111, 1117 (Pa. 1981) (citation omitted). Moreover,

14

when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences. *Id.*

On cross-examination, counsel for Freedom Medical questioned Ms. Mathis-Bush whether she had a practice of requesting notes from doctors who proscribe DME. N.T. 1/13/2015 at 61. He questioned her regarding the prescription written by Dr. Singer for Mr. Santos. *Id.* at 69-70. He further questioned Ms. Mathis-Bush about the date of Mr. Santos' visit to Dr. Singer and the date of the prescription. *Id.* at 73-74, 87-88. Here, counsel for Allstate's questions regarding the office notes, which corresponded to Mr. Santos' visit and prescription, were clearly in response to the questions asked by counsel for Freedom Medical during cross-examination.

The question regarding the 2011 claim was responsive to the challenges made by counsel for Freedom Medical about the completeness of Ms. Mathis-Bush's investigation. To the extent they went beyond the scope of cross-examination, counsel was permitted a brief and limited amount of questions that he omitted during direct-examination. A trial judge has wide discretion to vary the normal order of proof and may permit a party to bring out on re-direct examination relevant evidence which inadvertently the party failed to bring out on direct examination. *Commonwealth v. Brown*, 342 A.2d 84, 91 (Pa. 1975) (citation omitted). This Court was within its discretion.

Freedom Medical asserts that "[t]he Trial Court erred in allowing evidence relating to the cost of the DME to Freedom Medical, as well as permitting any challenge for the reasonableness and necessity of the DME since no peer review was performed by Allstate. See January 12, 2015 N.T. pp. 56-57."

As discussed *supra*, the MVFRL does not proscribe an exclusive manner for providers to calculate their usual and customary charge. "In calculating the usual and customary charge, an

15

insurer *may* utilize the requested payment amount on the provider's bill for services or the data collected by the carrier or intermediaries to the extent that the data is made available. 31 Pa. Code § 69.43(c) (emphasis added). Usual and customary charge is defined as "[t]he charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 31 Pa. Code § 69.3.

Freedom Medical, to prevail on its claim, was required to establish its usual and customary charge. The defense was allowed to present evidence challenging Freedom Medical's usual and customary charge. The cost of a device to Freedom Medical is relevant to calculating its usual and customary charge. Accordingly, this evidence was admissible. Further, Freedom Medical again asserts that Allstate should have been precluded from challenging the evidence of the reasonableness and necessity of the DME. Although Allstate denied the claim for a specific reason, this does not preclude Allstate from defending itself in court and challenging the reliability of the evidence presented by Freedom Medical.

Freedom Medical makes multiple claims of error challenging this Court's factual findings. Freedom Medical claims that:

    a. Based upon a review of the evidentiary record as a whole. The Trial Court erred by failing to find that Jeffrey Bonn of Freedom Medical was a credible witness, that Bush was not a credible witness, and that Santos was credible insofar that DME was delivered to his house in November, 2011.

    b. The Trial Court erred by not finding that the man who testified at the trial in January, 2015, who identified himself as Santos, was the same man who gave a recorded statement to April Mathis Bush ("Bush") of Allstate on April 26, 2012. Specifically, the photograph on the driver's license presented to Bush on April 26, 2012 depicts the same person who testified at the time of arbitration and trial. This driver's license expired on March 22, 2013. This driver's license presented by Santos at trial marked at P-23 has the same address that he had been using (12003 Bustleton

Avenue, Philadelphia, PA, where the DME was delivered). The photograph on the more recent license depicts the same person as the man who testified at trial, i.e. Santos.

c. The Trial Court erred by not rejecting Allstate's stated position that Santos could not verify receipt of the DME was unreasonable and completely unsupported by any evidence as Santos testified at his April 26, 2012 recorded statement that he received the DME. Other than Bush's mere hunch that Santos did not receive the DME, there was overwhelming credible evidence presented at trial that the DME was delivered to Santos. Santos also signed a work order confirming receipt which was provided to Allstate prior to suit. Photographs of the DME were sent to Allstate. No additional investigation was performed by Allstate. Finally, Santos testified at the arbitration and at trial that he received the DME and later gave it to his son, Paul Santos.

It is well settled that:

> [The fact-finder] is entitled to believe all, part, or none of the evidence presented. *Rafter v. Raymark Industries, Inc.*, 429 Pa. Super. 360, 632 A.2d 897 (1993). A [fact-finder] can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888 (1990). Credibility determinations are for the [fact-finder]. *Sundlun v. Shoemaker*, 421 Pa. Super. 353, 617 A.2d 1330 (1992).

*Randt v. Abex Corp.*, 234, 671 A.2d 228, 233 (Pa. Super. 1996). "It is the function of the [fact-finder] to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal."

*Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003).

This Court credited the majority of the testimony of both Mr. Bonn and Ms. Mathis-Bush. Both witnesses detailed the actions they took in their professional capacity. However, neither Mr. Bonn nor Ms. Mathis-Bush could testify to the events of November 2, 2011 and whether or not Mr. Santos received the DME.

This Court did not credit the testimony of Mr. Santos that he received the DME. It was clear from the testimony that Mr. Santos was not in possession of the DME at the time of trial.

N.T. 1/13/2015 at 15. Although Mr. Santos asserted that he received some medical equipment, he could not accurately describe the items that he received. At trial, Mr. Santos described the items he received as "the thing for the chest, the bracelet that is hot, and something for the feet. *Id.* at 13. At the arbitration hearing, Mr. Santos described the items he received as an electrical thing to give shocks to the heart and over here for the neck and an electrical brace and a thing to put your feet in the water. *Id.* at 18. According to Ms. Mathis-Bush, this description does not describe the equipment Mr. Santos was billed for. N.T. 1/13/2015 at 58. Mr. Santos did not know the date he received the equipment. *Id.* at 13. Mr. Santos was unable to produce the DME when ordered to by the court, even though they were allegedly in the possession of his son. *Id.* at 21-22.

Mr. Santos' credibility was damaged by the fact that another person posed as Mr. Santos and gave a statement to Ms. Mathis-Bush. Mr. Santos indicated that he did not give a statement to someone after the accident. *Id.* at 27. Mr. Santos admitted that the first time he met Ms. Mathis-Bush was at the arbitration hearing. *Id.* at 29-30.

Besides Mr. Santos' inaccurate descriptions and Mr. Bonn's incredible assertions that Mr. Santos received all of the equipment billed for, there was very little corroborating evidence. Although there was a work order with a signature purportedly from Mr. Santos, this Court does not find it persuasive. Mr. Santos admitted to signing papers he did not understand. *Id.* at 27. Additionally, there was evidence that another individual had posed as Mr. Santos. There was nothing in Dr. Singer's notes that indicated that any DME had been discussed with Mr. Santos. *Id.* at 57. Finally, although Freedom Medical presented pictures of DME, there was no credible evidence supporting that the equipment in the photos was ever provided to Mr. Santos.

18

Accordingly, the weight of the evidence supported the conclusion that Mr. Santos did not receive the DME. These claims are meritless.

Freedom Medical next alleges that "[t]he trial court erred in finding that the DME was not reasonable and necessary because Allstate failed to have a peer review performed." Freedom Medical is mistaken. This Court did not conclude that the DME was not reasonable and necessary. This Court found that Mr. Santos did not receive the DME. Accordingly, no finding as to the reasonableness or necessity of the equipment was required.

Freedom Medical claims that "[t]he Trial Court erred in failing to find that Allstate's failure to pay Freedom Medical's medical bills was unreasonable. The Trial Court should have found that Allstate was liable for damages under § 1716 and 1798 of the Pennsylvania Financial Responsibility Motor Vehicle Act, including interest at 12% of the bills of $373.56 from December 15, 2011 to the present. This amount is $3.73 per month, for a total of $138.21 in interest as of the end of trial."

Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. 75 Pa.C.S. § 1716. Freedom Medical did not establish that it provided DME to Mr. Santos; and thus, did not provide reasonable proof of the amount of benefits. Therefore, Allstate was under no obligation to pay Freedom Medical.

Freedom Medical makes multiple allegations of error complaining of Allstate's handling of its investigation and denial of the claim. Freedom Medical alleges that:

a. The Trial Court erred by failing to find that Allstate violated the Unfair Insurance Practices Act ("UIPA"), 40 Pa. C.S.A. §1171.1 and Unfair Claims Settlement Practices Regulations ("UCSPA"), 31 Pa. C. §146-6, 146.7 by not completing its investigation within a reasonable time and by not properly advising Freedom Medical of the results of the investigation.

b. The Trial Court erred in failing to find that the conduct of Allstate was wanton because its statement to Freedom Medical on April 29,

19

2013 that Santos had not received the DME was misleading and an outright falsehood. Further, Allstate refused to respond to Freedom Medical's request for a copy of the statement of Santos. Allstate's goal has been to make it as costly as possible for medical providers such as Freedom Medical to pursue meritorious claims by making misleading statements, filing repeated appeals, and presenting frivolous defenses that were never communicated to Freedom Medical Prior to suit.

c. The Trial Court erred in failing to find that the failure of Allstate to pay Freedom Medical's invoice is conduct which is wanton, subjecting Allstate to treble damages pursuant 75 Pa. S.C.A. Section 1797(b)(4), as Allstate had no basis not to pay for the DME, conducted an incomplete investigation, failed to apprise Freedom Medical and Santos of the status of its investigation as required by the UIPA, and made false and misleading statements that the DME had not been received by Santos. Olsofsky, v. Progressive Ins. Co., F, 480 fn. 3 (Lack. Cty., 2001), 2001 Pa. Dist. & Cnty Dec. LEXIS 418. *See also*, 75 Pa. C.S. §1797(b)(1), for the purpose of PRO.

Initially, this Court notes that the Unfair Insurance Practices Act states "[a]ny of the following acts *if committed or performed with such frequency as to indicate a business practice* shall constitute unfair claim settlement or compromise practices." 40 Pa.C.S.A. § 1171.5(a)(10) (emphasis added). Freedom Medical has not alleged that the complained of actions by Allstate have been committed with such frequency as to constitute a business practice. This claim is meritless.

"Every insurer shall complete investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed within the time. If the investigation cannot be completed within 30 days, and every 45 days thereafter, the insurer shall provide the claimant with a reasonable written explanation for the delay and state when a decision on the claim may be expected." 31 Pa. Code § 146.6. "[I]f the investigation remains incomplete, the insurer shall, 30 days from the date of the initial notification and every 45 days

20

thereafter, send to the claimant a letter setting forth the reasons additional time is needed for investigation and state when a decision on the claim may be expected." 31 Pa. Code § 146.7.

On November 12, 2011, Freedom Medical submitted an invoice to Allstate. N.T. 1/12/2015 at 24. On November 29, 2011, Freedom Medical received a letter from Allstate denying reimbursement because the claim was under investigation. *Id.* at 36-37. On April 29, 2013, Allstate sent a letter to Freedom Medical indicating payment was denied. Allstate explained that Mr. Santos was unable to confirm receipt of the DME from the prescribing doctor. *Id.* at 43. Although Allstate notified Freedom Medical that it was investigating the claim within thirty days of initial notification of the claim, it failed to provide updates to Freedom Medical thereafter.

"Delay is a relevant factor in determining whether bad faith has occurred, but a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith .... [I]f delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 634 (W.D. Pa. 2014) (*quoting Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588–89 (E.D. Pa. 1999) *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (holding that the insurer's failure to send letters every forty-five days explaining why the claim had not yet been evaluated did not create a material issue of fact regarding bad faith)).

Here, Allstate was in regular communication with Mr. Santos and his attorney during the investigation. Freedom Medical was aware that Allstate was completing its investigation. Freedom Medical has not demonstrated that it was prejudiced by Allstate's failure to send regular updates. Although, Allstate was negligent in failing to inform Freedom Medical of the

21

progress of the investigation in the precise manner mandated by the regulations, such negligence does not constitute bad faith in this case.

Freedom Medical asserts that this Court erred in failing to find that Allstate's conduct was wanton and failing to award damages for such conduct. "A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party." 75 Pa.C.S. § 1797(4). As this Court has discussed *supra*, Allstate was justified in denying reimbursement because Mr. Santos could not establish receipt of the DME. Allstate was under no obligation to undergo the peer review process or pay Freedom Medical's bill. Allstate acted in a reasonable manner investigating the claim. Allstate clearly did not act in a wanton manner in denying a meritless claim. *Morrison v. Mountain Laurel Assurance Co.*, 748 A.2d 689, 691 (Pa. Super. 2000) (noting where a plaintiff cannot demonstrate that denial of coverage was unreasonable, bad faith cannot be established).

Post-Trial Matters

Finally, Freedom Medical submits multiple claims of error alleging this Court erred in denying attorney's fees:

> a. The Trial Court erred in failing to award reasonable counsel fees to Freedom Medical pursuant to 75 Pa. C.S.A. §1716, 1797 and 1798. Courts have made significant awards for legal fees on similar cases. Herd Chiropractic Clinic, P.C. v. State Farm Mutual Auto. Ins. Co., 29 A.3d 19 (Pa. Super. 2011) rev'd on other grounds 64 A.3d 1058 (Pa. 2013) (allowing legal fees of $27,047.50), Levine, supra (awarding $27,930.00 in legal fees).
>
> b. The Trial Court erred in failing to find that the hourly rate of Dean E. Weisgold, Esquire, in the amount of $350.00 per hour is

22

consistent with other practitioners with his level of experience (26 years) in this jurisdiction."

c. The Trial Court erred in failing to find that the legal fees and costs submitted by Freedom Medical ($27,079.10), were fair and reasonable and necessarily incurred in connection with this litigation, which began at the Philadelphia Municipal Court level in 2013, continued through arbitration and then concluded at a two day trial in 2015. See Exhibit P-9, and updated invoice.

Counsel for Freedom Medical argues that the following sections entitle him to attorney fees. "In the event the insurer *is found to have acted in an unreasonable manner* in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended." 75 Pa.C.S. § 1716 (emphasis added). "If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees." 75 Pa.C.S. § 1797(6). "In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended." 75 Pa.C.S. § 1798(b).

However, counsel for Freedom Medical ignores that "[i]f it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, the provider *may not collect payment* for the medically unnecessary treatment, services or merchandise." 75 Pa.C.S. § 1797(7) (emphasis added). The default rule in Pennsylvania is that litigants bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized

23

exception. *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1062-63 (Pa. 2013) (citation omitted).

Freedom Medical did not establish that it provided DME to Mr. Santos. Freedom Medical did not provide any merchandise to Mr. Santos, regardless of whether it was medically necessary or not. Thus, Allstate acted in a reasonable manner in denying its claim for reimbursement. Accordingly, counsel for Freedom Medical was not entitled to any attorney fees.

Finally, this Court notes that paragraphs 14, 15, 17, 18, 19, and 20 of Freedom Medical's Concise Statement of Matters Complained of on Appeal do not allege any allegations of error. This Court will not address them.

## I. CONCLUSION

For the foregoing reasons, the decision of this Court, granting judgment in favor of the Defendant, Allstate, and against Plaintiff, Freedom Medical, should be affirmed.

BY THE COURT,

_____
KENNETH J. POWELL, JR., J.

24